In re Glen Roy **PALMER** and wife, Glenda Jo Palmer, Debtors.

In re Jimmy Everett **VOYLES** and wife, Bonnie Lou Voyles, Debtors.

Bankruptcy Nos. 590–50021–13, 590–50143–13.

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

Jan. 22, 1991.

Tom R. King, Law Offices of Tom R. King, Lubbock, Tex., for debtors.

Kent Hale, Carr, Evans, Fouts, Craig, Terrill & Wolfe, Lubbock, Tex., for Heath Furniture.

Robert B. Wilson, Trustee-in-Bankruptcy, Lubbock, Tex., chapter 13 trustee.

## MEMORANDUM OF OPINION ON VALIDITY OF LIENS

JOHN C. AKARD, Bankruptcy Judge.

The question presented in these cases is whether a retail installment contract for household goods which refinances unpaid balances on prior contracts destroys the purchase money security interest character of the goods purchased under the prior contracts. If the goods purchased under prior contracts no longer retain their purchase money character, the Debtor can avoid the lien under § 522(f)(2) of the Bankruptcy Code.[1] The court finds that the goods purchased under prior contracts retain their purchase money character pursuant to Title 79, ch. 6 of the Texas consumer credit statutes on retail installment sales. Tex.Rev.Civ.Stat.Ann. arts. 5069–6.01—5069–6.09 (Vernon 1987).

### Facts

Glen Roy Palmer and Glenda Jo Palmer (the Palmers) made their first purchase from Heath Furniture Co. (Heath) in December, 1984. They purchased an electric dryer for $493.04, signed a "Retail Installment Contract—Goods and Security Agreement," and financed $448.00 payable in monthly installments of $34.54 each[2]. Their second contract in November, 1985 for the purchase of furniture showed a "Net Balance Prior Contract" of $197.99. This figure was added to the "Unpaid Balance of Cash Price" and financed at $39.47 per month. Similar contracts were signed in December, 1987 and February, 1989. The 1989 contract was for $3,888.00 (including the balance on the prior contract and interest) payable in 36 monthly installments of $141.91. The interest rates on the contracts ranged from 18.73% to 21.59%. As the Debtors entered into each new contract the interest on their prior contract was rebated in accordance with the "rule of 78's" in order to arrive at the "Net Prior Balance Contract." Each contract provided that the merchandise purchased by the prior contracts "also becomes a part of this contract and security agreement."

In connection with each contract the Palmers signed a "Consumer Credit Disclosure" prepared by Heath. Under the heading "Security", each form recited: "Seller will have a security interest in the purchased goods, and in any goods previously purchased from Seller so long as the purchase price for such goods remains unpaid, and in all accessions thereto and proceeds therefrom, to secure this and any other debt of Buyer to Seller."

On January 16, 1990 the Palmers filed for relief under Chapter 13 of the Bankruptcy Code. The proof of claim Heath filed in these proceedings listed all five contracts by number and stated that the claim was secured by the household goods listed on the retail installment contracts.

### Voyles

Jimmy Everett Voyles and Bonnie Lou Voyles (the Voyles) first purchase from Heath was in September, 1979. The same form of retail installment contract was used. Subsequent contracts were made in November, 1980, December, 1982, May, 1983, October, 1983, July, 1984, May, 1986, April, 1987, and January, 1989. The last contract was for the purchase of furniture and a stereo system. The "Net Balance Prior Contract" was $1,436.85 which resulted in an amount financed of $2,324.85. The contract was payable in 30 installments of $99.53 each. Interest rates ranged from 16.99% to 20.59%. Some of the contracts

---

**1.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

**2.** The documents provided to the court state "see reverse side for additional articles." The reverse sides of the documents were not included in the exhibits or in the proofs of claim.

listed the prior contracts, but the January, 1989 contract did not do so. The same consumer credit disclosure forms were used.

The claim Heath filed for $1,787.19 listed all nine prior contracts and stated that the claim was secured by the household goods listed on the retail installment contracts.

### Positions of the Parties

The Debtors argued what is commonly known as the "transformation rule", i.e., that Heath lost its purchase money security status when new purchases were added to the original contract. *Roberts Furniture Co. v. Pierce (In re Manuel)*, 507 F.2d 990 (5th Cir.1975). The rule states that a security interest is transformed into a non-purchase money security interest when the debt is refinanced and the property secures other obligations of the debtors. Therefore, the security interest was avoidable under § 522(f)(2).

Heath argued that the transformation rule did not apply to retail installment sale contracts in Texas, because the Texas Consumer Credit Code expressly allows consolidation of purchases into one contract with each contract retaining its purchase money status notwithstanding consolidation, therefore, the security interest was not avoidable by the Debtors.

### STATUTES

Tex.Bus. & Com.Code Ann. § 9.107 (Vernon Supp.1991)[3] states: A security interest is a "purchase money security interest" to the extent that it is

> (1) taken or retained by the seller of the collateral to secure all or part of its price ...
>
> ....

Tex.Bus. & Com.Code Ann. § 9.203(d) (Vernon Supp.1991) states:

> A transaction, although subject to this chapter, is also subject to Title 79, Revised Civil Statutes of Texas, 1925, as amended, [The Texas Consumer Credit

Code as codified at Tex.Rev.Civ.Stat. Ann. art. 5069.01 *et seq.* (Vernon 1987] and in the case of conflict between the provisions of this Chapter and any such statute, the provisions of such statute control....

Tex.Civ.Stat.Ann. art. 5069–6.02(14)(a) (Vernon 1967) states in pertinent part:

> If, in a retail installment transaction, a retail buyer makes any subsequent purchases of goods or services from a retail seller from whom he has previously purchased goods or services under one or more retail installment contracts, and the amounts under such previous contract or contracts have not been fully paid, the subsequent purchases may, at the seller's option, be included in and consolidated with one or more of such previous contract or contracts. Each subsequent purchase shall be a separate retail installment contract under this Chapter, notwithstanding that the same may be included in and consolidated with one or more of such previous contract or contracts.

Tex.Civ.Stat.Ann. art. 5069–6.02(14)(c) (Vernon 1967) states in pertinent part:

> When such subsequent purchases are made, if the seller has retained ... a security interest in any of the goods purchased under any one of the contracts included in the consolidation, the entire amount of all payments made prior to such subsequent purchases shall be deemed to have been applied to the previous purchases; and each payment after such subsequent purchase made on the consolidated contract shall be deemed to have been allocated to all of the various purchases in the same ratio as the original cash sale prices of the various purchases bear to the total of all. Where the amount of each installment payment is increased in connection with such subsequent purchases, at the seller's option, the subsequent payments may be allocated as follows: an amount equal to the original periodic payment to the previous

---

**3.** Tex.Bus. & Com.Code Ann. § 1.101 *et seq.* (Vernon 1968) (as supplemental) is the Texas

adaptation of the Uniform Commercial Code.

purchase, the balance to the subsequent purchase....

## DISCUSSION

A security interest is a purchase money security interest when it is taken by the seller to secure all or part of the price of the goods. Tex.Bus. & Com.Code Ann. § 9.107 (Vernon Supp.1991). The Debtors argued that once Heath added new purchases and consolidated the obligations on a new contract, the goods lost their purchase money character because the collateral secured more than its own price. The Debtors relied on cases such as *Manuel, supra,* in which the Fifth Circuit Court of Appeals adopted the transformation rule. This court followed the transformation rule in *Gillie v. First State Bank (In re Gillie),* 96 B.R. 689 (Bankr.N.D.Tex.1989). *Manuel* and *Gillie* involved non-purchase money advances which were coupled with the balance due on a purchase money claim. Thus, *Manuel* and *Gillie* are inapplicable to the instant cases.

The court finds *Bond's Jewelers, Inc. v. Linklater (In re Linklater),* 48 B.R. 916 (Bankr.D.Nev.1985) directly on point. *Linklater* adopted the dual status rule which holds that if two purchase money security interests are combined, the purchase money security interest is retained in each item to the extent of the unpaid balance of its price. In *Linklater,* the creditor applied the debtor's installment payments to the oldest purchase—a first in, first out (FIFO) process. This court believes the FIFO method of allocation of payments is the most equitable since it encourages security agreements that benefit both the buyer and the seller and facilitate consumer sales. However, the Texas Legislature has spoken on the subject of allocation of installment payments and this court must follow its direction. *Pristas v. Landaus of Plymouth, Inc. (In re Pristas),* 742 F.2d 797 (3rd Cir.1984), held that the allocation provisions of a state statute controlled where a debt secured by a purchase money security interest in consumer goods was consolidated with that incurred for subsequent purchases, at least to the extent the original items secured the unpaid part of their own price.

The Texas Consumer Credit Code controls over the U.C.C. when the two conflict. Tex.Bus. & Com.Code Ann. § 9.203(d) (Vernon Supp.1991). The Texas Consumer Credit Code expressly provides that a retail installment contract retains its purchase money character even though subsequent purchases are commingled with those purchased under prior contracts. Tex.Rev.Civ. Stat.Ann. art. 5069–6.02(14)(a), (c) (Vernon 1987). Each purchase remains a separate retail contract. *Id.* Article 5069–6.-02(14)(c) provides for an allocation of payments on a pro rata basis. Under the Texas statute, installments paid after contracts are consolidated are allocated so that the most expensive item purchased gets the largest portion of the payment—even though it may not be the item purchased first. These statutory provisions are binding upon the parties because Tex.Rev.Civ. Stat.Ann. art. 5069–6.09 (Vernon 1987) states that "[n]o act or agreement of the retail buyer before or at the time of the making of a retail installment contract, retail charge agreement or purchase thereunder shall constitute a valid waiver of any of the provisions of this Chapter." The contracts state that Texas law applies. The Debtors' arguments that they were not apprised of these provisions is to no avail, because they are presumed to know the law.

Heath's documents and claims might be read as claiming a nonpurchase money security interest in all of the furniture to secure all amounts due to Heath. It is not clear that such a reading could be sustained under the Texas Consumer Credit Code, but it is not necessary for the court to decide that issue. Both the Palmers and the Voyles elected the "federal exemptions" under § 522(d) and claimed their household furniture as exempt. Under § 522(f) they may avoid any nonpurchase money security interest in the exempt furniture.

### Conclusions

The court finds that Heath retained a purchase money security interest in all

goods purchased by the Debtors. Each purchase remained a separate contract and payments are required to be allocated in accordance with the Texas Consumer Credit Code. As a result, Heath's security interest continues to the extent that the collateral secures its own price. The court will set a hearing to determine the value of and the balance due on each item.

ORDER ACCORDINGLY.[4]

---

4. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.