**In re Mark Alan & Susan Jeanette CRISPIN, Debtors.**

**Mark Alan & Susan Jeanette CRISPIN Movants,**

**v.**

**NORWEST FINANCIAL, Respondents.**

**(A Contested Matter)**

**Bankruptcy No. 91–40131.**

United States Bankruptcy Court, E.D. Texas, Sherman Division.

March 20, 1992.

## MEMORANDUM OPINION DENYING IN PART AND GRANTING IN PART MOTION TO AVOID LIEN

C. HOUSTON ABEL, Chief Judge.

The Crispins ("Debtors") sought to avoid a lien impairing an exemption, and Norwest Financial ("Creditor") objected asserting the lien could not be avoided because it arose from a purchase money security interest. Initially the parties did not brief the applicability of the Texas Consumer Credit Code, so the court asked the parties to re-brief the issues, and amended briefs were filed. The court must determine whether Texas law preserves a purchase money security interest after the consolidation of two consumer retail sales. After reviewing the relevant facts and law, the court concludes that the purchase money security interest remains in part. The motion to avoid lien, therefore, is denied in part and granted in part. In accordance with Bankruptcy Rule 7052, Fed.R.Bankr. Proc. 7052, made applicable to contested matters such as motions to avoid lien through Bankruptcy Rule 9014, Fed. R.Bankr.Proc. 9014, the bankruptcy court makes the following findings of fact and conclusions of law:

## STATEMENT OF JURISDICTION

This is a core proceeding involving the determination of the extent and validity of a lien. 28 U.S.C. sec. 157(b)(2)(K); 11 U.S.C. sec. 522(f). The court has subject matter jurisdiction over this case under 28 U.S.C. sec. 1334, and this matter has been referred to the bankruptcy court by the standing order of reference.

## FINDINGS OF FACT

*A. The parties stipulated to the following facts:*

1. On October 20, 1989, the Debtors entered into a revolving charge agreement with the Creditor for the purchase price of an entertainment center ("Contract 1").

2. On February 13, 1990, the Debtors signed a retail installment contract with the Creditor for the purchase price of two bookcases, two chests of drawers, and a rocking chair ("Contract 2").

3. The Creditor maintained a security interest in each of the items purchased under the terms of Contract 1 and Contract 2.

4. The Debtors and the Creditor combined Contract 1 and Contract 2 into one agreement on June 14, 1990 ("Contract 3").

5. Contract 3 provides:

| | | |
|---|---|---|
| 797.37 | Amount paid on account [1] | |
| 7.34 | Amount returned to Debtors | |
| 29.88 | For joint life insurance | |
| 62.15 | For accident/health insurance | |
| 52.61 | For household goods insurance | |
| 10.00 | For non-filing insurance | |
| 582.03 | To Norwest Financial [2] | |
| $1,541.38 | Total Amount Financed | |

Contract 3 purports to maintain a security interest in the entertainment center, the two bookcases, the two chests of drawers, and the rocking chair (the "exempt furniture").

*B. The court specifically finds:*

6. The Debtors filed for protection under Chapter 13 of the Bankruptcy Code. The court takes judicial notice of the bankruptcy schedules. The exempt furniture was claimed as exempt under the federal exemption provisions, 11 U.S.C. sec. 522(b)(1), and the exemptions were within

---

1. This amount reflects the principal due on Contract 2.

2. This amount reflects the principal remaining on Contract 1.

the statutory value limitations. 11 U.S.C. sec. 522(d).

7. The Debtors currently possess and use the property they purchased from the Creditor.

8. The transactions involved in this proceeding were retail installment transactions.

## CONCLUSIONS OF LAW

### How the Issue Arises

The Debtors filed a motion to avoid lien in accordance with section 522(f)(2) of the Bankruptcy Code. Section 522(f)(2) provides that a debtor may avoid a lien if it affects an exemption in specific types of property that are used by the family for everyday activities. 11 U.S.C. 522(f)(2). The statute specifies, however, that the lien may not be avoided if the creditor possesses the property or if the creditor has a valid purchase money security interest in the property. Of the requirements of section 522(f)(2), the only one involved in this case is whether the Creditor has a valid purchase money security interest. If a purchase money security interest exists, the lien is valid. If it does not, any alleged lien may be avoided. *In re Palmer*, 123 B.R. 218, 221 (Bankr.N.D.Tex.1990).

The issue before the court arises when two or more contracts which are subject to a purchase money security interest are consolidated into a third contract that purports to maintain a security interest in the collateral. The parties have stipulated that each of the first two contracts created a purchase money security interest, and their stipulation is consistent with the Texas UCC which specifies that a purchase money security interest exists if the security interest is "taken or retained by the seller of the collateral to secure all or part of its

price." Tex.Bus. & Comm.Code sec. 9.107 (Vernon Supp.1991) (Tex.UCC). Does the third consolidating contract destroy the purchase money nature of the prior contracts or is the purchase money security interest maintained? Courts have had difficulty resolving the issue and have reached differing conclusions. *See* William D. Hawkland, *UCC Series* sec. 9–107.05 (1986 & Supp.1990) (addressing various approaches different courts have taken).

The Debtor contends the Fifth Circuit would apply the transformation rule to this situation. Under the transformation rule the lien would be invalid because the third contract would transform the purchase money security interest into a non-purchase money security interest. The Creditor counters that the Texas Consumer Credit Code controls. As the Texas Consumer Credit Code specifies that at least part of the purchase money security interest remains, it is not necessary to evaluate whether the Fifth Circuit would apply the transformation rule.

### The Texas Consumer Credit Code Modifies the UCC

The Debtor's contention that the Fifth Circuit follows the transformation rule stems from the reasoning of two cases: *Roberts Furniture Co. v. Pierce (In re Manuel)*, 507 F.2d 990 (5th Cir.1975) and *Gillie v. First State Bank (In re Gillie)*, 96 B.R. 689 (Bankr.N.D.Tex.1989).[3] In *Manuel*, the Fifth Circuit construed the Uniform Commercial Code ("UCC") as it had been adopted in another state. As the *Manuel* court noted, property rights in bankruptcy are governed by state law. *Manuel*, 507 F.2d at 992. Assuming the Texas courts had not otherwise construed its version of the Uniform Commercial Code and assuming the Texas legislature had not statutori-

---

**3.** The court wishes to note that in *Gillie* the bankruptcy court allowed lien avoidance. The court, thus, found that the items were exempt. In *Gillie*, one spouse made the first contract and the other made the second. The court held that as the husband had no liability of the first note and the wife had no liability on the second, the second note acted as a novation. Texas is a community property state. When a contract is made by one spouse, the community property subject to the sole management of the noncontracting party and the separate property of the noncontracting spouse are not subject to the contracting party's agreement unless the agreement is for necessaries. Tex.Fam.Code sec. 4.02; 4.031; 5.61 (Vernon 1975 & Supp.1991). The *Gillie* court did not consider whether the exempt items might be necessaries. Of course, a novation analysis would be appropriate under the theory that a new debt replaced an old one.

ly modified its version of the Uniform Commercial Code, this court would apply the reasoning of *Manuel*.

The Texas legislature, however, has limited the Texas Uniform Commercial Code with provisions in the Texas Consumer Credit Code ("Credit Code").

> A transaction, although subject to [the Texas version of the UCC], is also subject to Title 79, Revised Civil Statutes of Texas, 1925, as amended, [Tex.Rev.Civ. Stat.Ann. art. 5069.01 *et seq.* (Vernon 1987) (the Texas Consumer Credit Code) ] and in the case of conflict between the provisions of [the Texas UCC] and any such statute, *the provisions of such statute shall control.*

Tex.Bus. & Comm.Code Ann. sec. 9.203(d) (Vernon Supp.1991) (emphasis added).

Under the Texas Credit Code, the combination of two consumer credit purchases into a third contract does not completely destroy the purchase money nature of the transaction. The two relevant sections of the Credit Code provide,

> If, in a retail installment transaction, a retail buyer makes any subsequent purchase of goods or services from a retail seller from whom he has previously purchased goods or services under one or more retail installment contracts, and the amounts under such previous contract or contracts have not been fully paid, the subsequent purchases may, at the seller's option be included in and consolidated with one or more such previous contract or contracts. Each subsequent purchase shall be a separate retail installment contract ... notwithstanding that the same may be included in and consolidated with one or more of such previous contract or contracts.

Tex.Rev.Civ.Stat.Ann. art. 5069–6.02(14)(a) (Vernon 1967).

> When such subsequent purchases are made, if the seller has retained ... a security interest in any of the goods purchased under any one of the contracts included in the consolidation, the entire amount of all payments made prior to such subsequent purchases shall be applied to the previous purchases; and each

payment after such subsequent purchase made on the consolidated contract shall be deemed to have been allocated to all of the various purchases in the same ratio as the original cash sale prices of the various purchases bear to the total of all. Where the amount of each installment payment is increased in connection with such subsequent purchases at the seller's option, the subsequent payments may be allocated as follows: an amount equal to the original periodic payment to the previous purchase, the balance to the subsequent purchase.

Tex.Rev.Civ.Stat.Ann. art. 5069–6.02(14)(c) (Vernon 1967).

### The Transactions Involved In This Case Are Retail Installment Sales Subject to the Texas Consumer Credit Code.

The Debtors purchased the exempt furniture from Andrews Furniture, but the financing occurred through Norwest Financial. As the agreements evidence, Andrews Furniture arranged the financing of these transactions for Norwest, and Andrews Furniture is listed as the seller. The Consumer Credit Code specifies that an assignment may be effective without notifying the consumer purchasers. Tex.Rev. Civ.Stat.Ann. art. 5069–6.07. Although the court has not been provided with evidence of an assignment, the parties have stipulated that Norwest has the right of collection. Moreover, the Texas courts have held that when evaluating the applicability of the Texas Consumer Credit Code, the substance rather than the label of a transaction determines its nature. *Espinoza v. Victoria Bank & Trust Co.,* 572 S.W.2d 816, 823 (Tex.App.—Corpus Christi 1978, writ ref'd n.r.e.). The evidence in this case indicates Andrews Furniture arranged financing with Norwest. The agreement, therefore, is subject to the retail installment sales provisions of the Texas Consumer Credit Code.

### Does the Texas Consumer Credit Code Encompass the Third Contract?

The Timing of the Transaction:

 ▮ The Debtors contend the Texas Consumer Credit Code does not apply when a

debtor does not purchase new items but merely refinances and consolidates old obligations into a new note. In other words, the Debtors suggest that the two contracts must merge upon the purchase of a new item. The court is not persuaded by this argument.

The statute provides, a "subsequent purchase may be included in and consolidated with one or more of such previous contract or contracts." Tex.Rev.Civ.Stat.Ann. art. 5069–6.02(14)(a). The statute continues: "[e]ach subsequent purchase shall be a separate retail installment contract under this Chapter, notwithstanding that the same may be included in and consolidated with one or more of such previous contract or contracts." Tex.Rev.Civ.Stat.Ann. art. 5069–6.02(14). As the Credit Code expressly provides that consolidation does not affect the separateness of the retail installment agreements, the legislature implicitly recognized that at least three separate transactions would occur: the first retail agreement, the second agreement, and the consolidation. The very use of the term consolidation implies unification of two or more into one. *Black's Law Dictionary* 308 (6th ed. 1991). There is nothing in the statute which specifies when the timing must occur. The timing of the consolidation, thus, is irrelevant.

The Allocation of Funds:

The court also has considered whether the refinancing contemplated a transaction that was outside the scope of the retail installment sales provisions of the Texas Consumer Credit Code. In *Palmer*, Judge Akard distinguished the *Manuel* and *Gillie* cases on the basis that those cases "involved non-purchase money advances which were coupled with the balance due on a purchase money claim." *Palmer*, 123 B.R. at 221. There are two dollar amounts in this case that do not relate to the purchase money claims: the insurance amounts and the $7.34 that was given directly to the Debtors.

■ As for the insurance amounts, the documents introduced into evidence indicate that life insurance, health insurance, and household goods insurance were pur-

chased. Each of these insurance purchases is allowed under the Consumer Credit Code. Tex.Rev.Civ.Stat.Ann. art. 5069–6.04. This provision is consistent with the section 2.501 of the Commercial Code which specifies that a seller retains an insurable interest in goods which are sold subject to a security interest. Tex.Bus. & Comm.Code sec. 2.501. The insurance provision, thus, did not destroy the purchase money security interest.

■ The court is left to determine the effect of the $7.34 which was disbursed directly to the Debtors. Based solely on the insignificance of the disbursement, the court believes that amount is an account reconciliation rather than a bargained for disbursement to the Debtors. As the parties did not address the issue, however, the court will reopen the evidence on that one issue if there is any contrary evidence to be presented.

## CONCLUSION

■ Having reviewed the evidence and the relevant law, the court concludes that in Texas a valid purchase money security interest exists in the Debtors' property, but the extent of that purchase money security interest must still be determined. The court will have an evidentiary hearing to determine the extent of the security interest remaining after allocating the payments on a pro rata basis in accordance with article 5069–6.02(14)(c). Tex.Civ.Stat. Ann. art. 6.02(14)(c). As purchase money security interests are excluded from lien avoidance, the Creditor's lien will be valid to the extent of the purchase money security interest. An order reflecting the findings of fact and conclusions of law shall be issued simultaneously with the issuance of this opinion.