**In re Francisca Benavidez GONZALES, Debtor.**

**Bankruptcy No. 696–60138–13.**

United States Bankruptcy Court,
N.D. Texas,
San Angelo Division.

March 10, 1997.

**134**

Ron Mapel, San Angelo, TX, for Debtor.

F. Scott Flow, Amarillo, TX, for Norwest.

Walter O'Cheskey, Lubbock, TX, Chapter 13 Trustee.

## MEMORANDUM OF OPINION ON DEBTOR'S MOTION TO AVOID LIEN

JOHN C. AKARD, Bankruptcy Judge.

Francisca Benavidez Gonzales, the Debtor in the captioned Chapter 13 case, filed a motion to avoid the lien claimed on a portion of her household furniture by Norwest Financial of Texas, Inc. (Norwest). The court finds that the motion should be granted.[1]

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(B), and (K).

## FACTS [2]

In July 1995, the Debtor purchased several items of household furniture from Oak Gallery in Kerrville, Texas. She signed a retail installment contract in favor of Oak Gallery promising to pay $1,480.00 in installments of $76.45 per month. Oak Gallery assigned the contract to Norwest.

In August 1995, the Debtor purchased some bedroom furniture and an entertainment center from Rick's Home Furnishings of Brady, Texas (Rick's). In connection with that transaction, she signed an application for a revolving charge agreement with Rick's and a sales ticket to finance $1,758.90. Rick's assigned the revolving charge agreement and sales ticket to Norwest.

In September 1995, Norwest sent the Debtor a solicitation encouraging her to borrow funds from Norwest. The solicitation was in the form of a draft for $511.77. She negotiated the draft, thereby agreeing to make monthly payments.

On January 8, 1996, the Debtor executed a new note to Norwest for $4,623.39. She signed a security agreement, pledging as collateral various items of personal property in addition to the items purchased at Oak Gallery and Rick's. Thereafter, Norwest marked the three original obligations "paid."

On August 5, 1996, the Debtor filed for relief under Chapter 13 of the Bankruptcy Code. Norwest filed a proof of claim for $3,836.06 for "money loaned" on January 8, 1996, stating that the claim was secured. The Debtor claimed the property listed in the January 8, 1996 security agreement as exempt and filed a Motion to Avoid the Lien (Motion) pursuant to § 522(f) of the Bankruptcy Code.[3] Norwest opposed the Motion, asserting a purchase money security interest in the collateral.

---

2. The court adopts the Stipulation of Facts (with witness and exhibit lists) filed by the parties on November 6, 1996. The court will recite only the facts necessary to a decision in this matter.

3. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

## DISCUSSION

■ Under § 522(f)(1)(B), a debtor may avoid a nonpossessory, nonpurchase money security interest in exempt household furnishings and household goods. Norwest does not contest that the property in question is property classified as exempt household furnishings and household goods.

A "purchase money security interest" is a security interest that is "taken or retained by the seller of the collateral to secure all or part of its price." TEX.BUS. & COM. CODE ANN. § 9.107(1) (Vernon 1991). To the extent that the January 8, 1996 security agreement lists property which the Debtor did not purchase from Oak Gallery or Rick's, Norwest clearly does not have a purchase money security interest and its lien with respect to those items must be avoided.

■ The amount claimed as secured by Norwest exceeds the original total purchase price of the items the Debtor purchased at Oak Gallery and Rick's. Norwest acknowledges that the January 8, 1996 note includes amounts due with respect to the September 1995 unsecured loan. Norwest did not offer any explanation of the amount claimed, nor did it tender any evidence as to the allocation of payments. The secured creditor bears the burden of showing that it has a security interest and the extent of that security interest. *In re Tesmetges,* 87 B.R. 263, 270 (Bankr.E.D.N.Y.), *aff'd,* 95 B.R. 19 (E.D.N.Y. 1988). Norwest having failed to carry that burden, the Debtor is entitled to avoid the lien.

■ In the event it should be determined on appeal that the court is in error in its conclusions described above, the court will address whether any portion of Norwest's claim should be considered as a purchase money security interest. In support of its lien claim, Norwest points to the Texas Consumer Credit Code, codified at Tex.Rev.Civ. Stat.Ann. art. 5069–1.101 *et seq.* (Vernon 1987) and, in particular, to the Retail Installment Sales provisions contained in art. 5069–6.01 *et seq.*

More specifically, Norwest relies on art. 5069–6.02(14)(a) which reads as follows:

(14)(a) If, in a retail installment transaction, a retail buyer makes any subsequent purchases of goods or services from a *retail seller* from whom he has previously purchased goods or services under one or more retail installment contracts, and the amounts under such previous contract or contracts have not been fully paid, the subsequent purchases may, at the seller's option, be included in and consolidated with one or more of such previous contract or contracts. Each subsequent purchase shall be a separate retail installment contract under this Chapter, notwithstanding that the same may be included in and consolidated with one or more of such previous contract or contracts. All the provisions of this Chapter with respect to retail installment contracts shall be applicable to such subsequent purchases except as hereinafter stated in this section.

(emphasis added).

Provisions for allocating the payments among the contracts are contained in subdivision (14)(c). Norwest asserts that this provision entitles it to assert a continuing purchase money security interest. This section uses the phrase "retail seller" which is defined in art. 5069–6.01(d) as follows:

(d) "Retail seller" or "seller" means a person regularly and substantially engaged in the business of selling goods or services to retail buyers, but does not include the services of a member of a learned profession.

Norwest admits it is not "regularly and substantially" engaged in the business of selling goods or services to retail buyers. Instead, Norwest is a "holder" as that term is defined in art. 5069–6.01(m) as follows:

(m) "Holder" means the retail seller of the goods or services under the retail installment contract or retail charge agreement or the credit card issuer under the retail credit card arrangement or the assignee if the retail installment contract or the retail charge agreement or outstanding balance under either has been sold or otherwise transferred.

Norwest asserts that it should be considered as occupying the same position as a retail seller in this instance. That argument ig-

nores the clear statutory use of the words "retail seller." The Texas Legislature knew when to use the word "holder." Indeed, it used that word in preceding subsections (11), (12) and (13). There is no evidence that the Legislature made a mistake when, in subdivision (14), it used the phrase "retail seller." This court must follow the clear dictates of the statute.

 The January 8, 1996 note was a novation. The prior documents were marked "paid" and Norwest took a new security agreement. Without statutory authority, Norwest cannot continue the purchase money security status which existed with the original purchase contracts.

The Fifth Circuit adopted what is commonly known as the transformation rule. The rule provides that when a purchase money contract is refinanced, it loses its purchase money character. *Roberts Furniture Co. v. Pierce (In re Manuel)*, 507 F.2d 990 (5th Cir.1975); *Gillie v. First State Bank (In re Gillie)*, 96 B.R. 689 (Bankr.N.D.Tex.1989).

Norwest urges this court to adopt the reasoning of the United States Bankruptcy Court for the Eastern District of Texas in *Crispin v. Norwest Fin. (In re Crispin)*, 139 B.R. 187 (Bankr.E.D.Tex.1992). Without determining whether this court would agree with the *Crispin* result, the court finds that case to be distinguishable for two reasons:

1. The cash advance was made at the time of the refinancing and it was only for $7.34. The *Crispin* court said "Based solely on the insignificance of the disbursement, the court believes that amount is an account reconciliation rather than a bargained for disbursement to the Debtors." *Id.* at 191. The court stated that the evidence would be reopened if a party contended the cash was a bargained for disbursement.

2. Secondly, in relying on art. 5069–6.02(14)(a) the *Crispin* court did not address the difference between the statutory definitions of "retail seller"

and "holder." Apparently, that issue was not brought to the court's attention.

## CONCLUSION

For the foregoing reasons, the Debtor's Motion to Avoid Lien should be granted.

ORDER ACCORDINGLY.[4]

---

4. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED.R. 7052 which is made applicable to Contested Matters by FED.R.BANKR.P. 9014. This Memorandum will be published.